Christopher Jethro
**EMERSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. C14–87–00003–CR.

Court of Appeals of Texas,
Houston (14 Dist.).

July 21, 1988.

Jimmy James, Henry L. Burkholder, III, Houston, for appellant.

John B. Holmes, Jr., J. Harvey Hudson, Jonathan Munier, Houston, for appellee.

Before JUNELL, SEARS and CANNON, JJ.

## OPINION

SEARS, Justice.

This is an appeal from a conviction for the offense of aggravated sexual assault. A jury found Appellant guilty of the offense and assessed his punishment at thirty-five years confinement in the Texas Department of Corrections and a fine in the amount of $5,000.00. We affirm.

Appellant originally asserted four points of error on appeal. This court, on March 17, 1988, granted Appellant's motion to include Mr. Charles Freeman as additional counsel of record and granted Mr. Freeman leave to file a post-submission brief. Consequently, Appellant filed a post-submission brief raising two additional points of error.

■ In his first point of error, Appellant contends the trial court erred in admitting extraneous offenses in the State's case-in-chief.

The record reflects that while she was enrolled in classes at Lamar University, the complainant dated a student named Herbert Ned. She broke up with Mr. Ned in 1984 and began dating Greg Anthony. Mr. Ned apparently was very angry when the complainant informed him of the fact that she wished to terminate the relationship. The complainant then transferred to Texas Southern University in the fall of 1985 and began working part-time for Dr. William H. Mack whose offices were located in the Medical Arts Building in downtown Houston.

On October 9, 1985, the complainant was approached by the Appellant in a Walgreens parking lot near the TSU campus. Appellant said, "Where have you been? Me and my friend have been looking for you." The complainant did not know Appellant but thought his face looked vaguely familiar and thought she might have seen him at Lamar University. She replied, "Just been around" and walked into the drugstore. When she returned to her car she noticed that Appellant was still there and she became alarmed. She drove to Gulfgate Mall and entered the shopping center when the Appellant followed her in his car.

The next day, October 10, 1985, the complainant was working at the receptionist's desk in Dr. Mack's office when she saw a figure in the waiting room through the translucent glass window. She opened the window and saw the Appellant. He told her that he knew where she worked and he began laughing. Then he warned her that he had better not catch her with "that Greg", and said, "My friend still thinks that you're a bitch, you coke bottle woman." Appellant then walked away without waiting for a response. The complainant was frightened by the encounter and when she returned home she placed a knife in her purse.

On October 11, 1985, the complainant arrived at Dr. Mack's office before the other employees and began typing patient charts. At approximately 9:10 a.m., the complainant attempted to open one of the office doors leading to the hallway and discovered that someone was on the other side of the door pushing against it. Appellant burst through the door laughing and grabbed the complainant's purse from the top of a nearby file cabinet. He removed the complainant's checkbook and the knife and placed the knife against her back. Appellant then forced the complainant into one of the examining rooms and ordered her to lie down on the examining table. Appellant raised her skirt and began to slowly cut away her panty hose. Then he raised the knife and brought it down in a stabbing motion as if to stab the complainant's leg but she rolled on her side and the knife was driven into the examining table. She kicked Appellant in the groin and he left the office with the complainant's checkbook still in his possession. The complainant called the police and Sergeant Vernon Gallier of the Sex Crimes Unit of the Homicide Division of the Houston Police Department was assigned to investigate the incident. The complainant identified Appellant from a photo spread on October 13, 1985.

On October 16, 1985, the complainant arrived at the Medical Arts Building at approximately 8:50 a.m. The building custodian escorted her to Dr. Mack's office, turned on the lights in all of the examining rooms, the waiting room, the receptionist's area, and Dr. Mack's personal office and then returned to the first floor of the building.

The complainant sat at her desk and had been working only about ninety seconds when she felt a gun placed to her head and heard a voice say, "I'm back." When Appellant ordered the complainant to get up and follow him she surreptitiously grabbed a pair of scissors from the desk and placed them in the pocket of her lab coat.

Appellant led the complainant to a storage room in Dr. Mack's office and ordered her to disrobe. Then he handed her a coffee cup and ordered her to fill it with hot water from the hot water dispenser. He instructed her to lie on the floor and pour the hot water across her vagina. The complainant complied and Appellant ordered her to repeat the process a number of times. Appellant told her to say "yes, sir" every time he spoke to her and then asked, "Do you love me?" to which she replied, "Yes, sir." When he asked, "Do you want to make love?" she did not immediately answer and Appellant ordered her to "Get up." Appellant began to pound her head against a cabinet, demanding that she say "Yes, sir." Then he pulled her checkbook from his pocket and threw it at her. Appellant forced the complainant down on the floor, folded the checkbook once and forced it into her vagina. At some point the scissors slid from the pocket of the complainant's lab coat onto the floor. Appellant removed the checkbook from the complainant's vagina and inserted the scissors. Appellant forced the complainant to grasp the scissors and "helped" her to cut her vagina with the scissors.

Appellant had a small bag with him from which he removed a walkie-talkie. He spoke into the walkie-talkie at least once during the assault: "I have her in a room with me now." He also mentioned his friend "Herbert" several times. Appellant removed the scissors from the complain-ant's vagina and dragged her to a window and told her to look down at a Mercedes parked on the street. He told her that after he left she was to break the glass by thrusting her arm through the window and that he would be watching. Appellant then disappeared.

The complainant waited thirty seconds to be certain Appellant had left the office, then she ran naked into the hallway screaming for help. Ms. Fernandez heard her screams from a nearby office and came to her aid. The complainant was initially too hysterical to speak but eventually said, "It was him again. It was him again." Ms. Fernandez left the complainant and told someone to call the police. She then ran down the stairs to the first floor and out onto the sidewalk where she saw Appellant about a half a block away. She followed him for a short distance and then, realizing she could be placing herself in danger, returned to the Medical Arts Building. Ms. Fernandez testified that she had noticed Appellant two days previously walking around the lobby of the building.

Officer W.J. Turner arrived and attempted to interview the complainant. However, she was hysterical and had to be given a sedative which rendered her unconscious. The complainant's face was swollen and bruised.

On October 17, 1985, the complainant and her parents met with Sergeant Gallier at the Sex Crimes Unit for an interview about the October 16 attack. However, the complainant was in a great deal of pain and complaining of double vision. When she became nauseous, Sergeant Gallier postponed the interview and the complainant was taken to the hospital where she remained for six days.

On November 13, 1985, the complainant went with Sergeant Gallier to Lamar University where they met with the campus police. When the complainant returned home at approximately 3:00 p.m. and unlocked the back door of her parent's home, Appellant jumped upon the porch behind her and forced her into the house. Appellant ordered the complainant to sit on the edge of a table and inserted a kitchen knife into her vagina several times. After sever-

al minutes, Appellant laughed, said "I got you", and left.

After the complainant was attacked this last time, the police displayed a photograph of Appellant on the news. Appellant then shaved the sides of his head to radically alter his appearance. Sergeant Stewart of the Houston Police Department unsuccessfully attempted to execute an arrest warrant on Appellant and shortly thereafter received a telephone call from Appellant in which Appellant identified himself as Chris Emerson and told Sergeant Stewart, "I'm looking for you. Your days are numbered." Sergeant Stewart heard Appellant's voice subsequently and identified Appellant as the caller. Appellant eventually surrendered and the complainant identified him in a line-up.

Appellant asserts that the attempted sexual assault on October 11, 1985, and the sexual assault on November 13, 1985, were extraneous offenses and the trial court erred in admitting testimony regarding those incidents into evidence at the trial for the alleged assault on October 16, 1985.

It is well established that an accused is entitled to be tried on the accusation made in the State's pleading and not on some collateral crime or for being a criminal generally. *Smith v. State,* 646 S.W.2d 452, 455 (Tex.Crim.App.1983). However, where one offense or transaction is one continuous episode or another offense or transaction is a part of the case on trial, or blended or closely interwoven therewith, proof of all facts is proper. *Maynard v. State,* 685 S.W.2d 60, 66 (Tex.Crim.App.1985); *Mitchell v. State,* 650 S.W.2d 801, 811 (Tex. Crim.App.1983), *cert. denied,* 464 U.S. 1073, 104 S.Ct. 985, 79 L.Ed.2d 221 (1984); *Euziere v. State,* 648 S.W.2d 700, 703 (Tex. Crim.App.1983).

■ In determining the admissibility of an extraneous offense, evidence of the context of the charged offense is almost always admissible under the reasoning that events do not occur in a vacuum and the jury has a right to have the offense placed in its proper setting so that all of the evidence may be realistically evaluated. *Mann v. State,* 718 S.W.2d 741, 744 (Tex. Crim.App.1986), *cert. denied,* —— U.S. ——,

107 S.Ct. 1633, 95 L.Ed.2d 206 (1987). Rarely will the prejudicial nature of such evidence render it inadmissible if it truly sets the stage for the jury's comprehension of the whole criminal transaction. *Maynard v. State,* 685 S.W.2d at 67; *Lott v. State,* 695 S.W.2d 237, 240 (Tex.App.—Corpus Christi 1985, pet. ref'd).

We find that the evidence of the incidents preceding and following the October 16, 1985, attack were admissible to show the context in which the offense occurred. The attacks upon the complainant were so closely interwoven that they are all part of a continuous scheme, motive, design and intent of the Appellant to assault and terrify the complainant. Further, an item taken from the complainant in the first attack was used in the charged offense.

■ Extraneous offenses are also admissible to circumstantially prove identity, scienter, malice or state of mind, scheme, or motive, and to refute a defensive theory raised by the accused. *Williams v. State,* 662 S.W.2d 344, 346 (Tex.Crim.App.1983). Premature admission of evidence of an extraneous transaction may be rendered harmless by the subsequent actions of the defendant at trial. *Rubio v. State,* 607 S.W.2d 498, 502 (Tex.Crim.App.1980); *Hurtado v. State,* 722 S.W.2d 184, 188 (Tex. App.—Houston [14th Dist.] 1986, pet. ref'd). We hold the evidence of the other attacks was admissible to show a scheme or plan, and admissible to refute Appellant's alibi defense and his testimony that he had never met the complainant and that her identification of him was erroneous. We do not find that the trial court abused its discretion in admitting the evidence of the extraneous offenses.

Moreover, even if it were error to admit this evidence, we would find the error harmless beyond a reasonable doubt where the complainant identified Appellant as her attacker and the evidence of his guilt was overwhelming. *Hurtado v. State,* 722 S.W.2d at 188. Point of error one is overruled.

■ In his second point of error, Appellant asserts the trial court erred in improperly restricting the defense attorney's cross-examination and in refusing to allow

him to make a bill of exception. Appellant has set forth in his brief an extensive portion of the statement of facts which he maintains contains examples of this undue restriction on his cross-examination. However, he has failed to direct this court to those portions of the record where this testimony may be found as required by TEX.R.APP.P. 74(d). Nonetheless, we have reviewed the record and located this testimony. We find that the trial court properly sustained the State's objections to the relevancy of Appellant's cross-examination. Also, we do not find that the trial court prohibited Appellant from making a bill of exception to the court's rulings on these objections. In several instances Appellant specifically informed the court that he wished to make a bill of exception at a "later time." In the remainder of the instances of which Appellant complains, he requested the opportunity to make a bill of exception and the trial court merely instructed him that the matter would be considered at a later time, or that he could make a bill of exception at a later time. We find no evidence in the record that the trial court refused to allow Appellant to make a bill of exception. A bill of exception may be made at any time before the court's charge is read to the jury. TEX.R. APP.P. 52(b). However, Appellant failed to pursue his request at a later time as advised by the court. Appellant failed to preserve error by putting the excluded testimony in the record. *Van Byrd v. State,* 605 S.W.2d 265, 268 (Tex.Crim.App.1980). Point of error two is overruled.

In his third point of error, Appellant contends the trial court erred in not following the appropriate procedure on his motion to recuse the trial judge.

The record reflects that Appellant's trial commenced on October 28, 1986. Appellant filed his Motion to Recuse on the basis of bias and prejudice on November 3, 1986, and the trial judge denied the motion on that same date. Appellant apparently contends that the trial court erred in not requesting the presiding judge of the administrative district to hear Appellant's written motion to recuse the trial judge as mandated by Tex.Gov't Code Ann. § 74.036(c)(3) (Vernon Supp.1987).

We hold that Appellant's motion, filed several days after the trial had commenced, was filed untimely. *Thibodeaux v. State,* 726 S.W.2d 601, 605 (Tex.App.—Houston [14th Dist.] 1987, pet. ref'd); *Limon v. State,* 632 S.W.2d 812, 815–16 (Tex.App.—Houston [14th Dist.] 1982, pet ref'd). There is no applicable rule of criminal procedure setting forth the requirements of a motion to recuse. However, TEX.R.CIV.P. 18a has been cited as furnishing guidance. *McClenan v. State,* 661 S.W.2d 108, 110 n. 2 (Tex.Crim.App.1983); *Thibodeaux v. State,* 726 S.W.2d at 605; *Limon v. State,* 632 S.W.2d at 816 n. 1.

Rule 18a(a) provides:

At least *ten days* before the date set for trial or other hearing in any court other than the Supreme Court, the Court of Criminal Appeals or the court of appeals, any party may file with the clerk of the court a motion stating grounds why the judge before whom the case is pending should not sit in the case ... *The motion shall be verified* and must state with particularity the grounds why the judge before whom the case is pending should not sit....

TEX.R.CIV.P. 18a(a). We find that not only was Appellant's Motion to Recuse untimely, but also that his motion was not verified. However, in the interest of justice, we have reviewed the record in light of Appellant's contentions and his right to a fair and impartial trial. We have discovered no bias or prejudice on the part of the trial judge towards either Appellant or his defense counsel which warrants reversal. Point of error three is overruled.

In his fourth point of error, Appellant contends the trial court erred in removing his trial counsel from the case and replacing him with other counsel during the trial. Appellant asserts the trial court's action denied him his right to be represented by counsel of his own choice.

The record reflects that when the trial commenced Appellant was represented by Mr. Walter Pink and Mr. Charles Freeman. Mr. Pink was the lead counsel at trial and Mr. Freeman assisted in voir dire and took notes during the presentation of the evidence. However, during the trial, the

judge held Mr. Pink in contempt on two separate occasions. On the second occasion, during the fifth day of the trial, the judge sentenced Mr. Pink to seven days confinement and requested that he designate either Mr. Freeman or Mr. Robert Wallace, another attorney assisting Mr. Pink during the trial, as the new lead counsel for the defense. Mr. Pink retorted, "At this time, your Honor, I have just fired these two attorneys. They no longer represent this gentleman." The trial court then increased Mr. Pink's contempt punishment to ten days incarceration and had him removed from the courtroom. The judge noted that it was near the end of the trial and three-fourths of the defense's evidence had been presented. He questioned both Mr. Freeman and Mr. Wallace concerning their participation in the case and their ability to replace Mr. Pink as lead counsel. He determined that Mr. Freeman had the experience and familiarity with the case necessary to represent Appellant for the remainder of the trial, and he appointed Mr. Freeman as Appellant's defense counsel. Court was recessed until the following day to give Mr. Freeman an opportunity to prepare himself for the continuation of the trial. The court advised Mr. Freeman that it would entertain any motions for continuance the following day and that both Appellant and Mr. Freeman would be allowed to consult with Mr. Pink.

When the court reconvened the following morning, Mr. Freeman informed the judge that Appellant wished to make a statement regarding his defense attorney. Appellant advised the court that he had been satisfied with Mr. Pink and Mr. Freeman's past representation and that he was prepared to continue the trial with Mr. Freeman as his trial attorney. He requested that the trial proceed immediately without a continuance and insisted that he did not want to delay things any longer.

Mr. Freeman withdrew the Motion for Continuance he had previously filed with the court and announced that he was ready to proceed. The trial court again advised Mr. Freeman that he would be allowed to consult with Mr. Pink, but that Mr. Pink would not be allowed to return to the courtroom.

It is well recognized that an accused "should be afforded a fair opportunity to secure counsel of his own choice." *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 58, 77 L.Ed. 158 (1932); *Ex parte Windham*, 634 S.W.2d 718, 720 (Tex.Crim.App.1982). However, the right to counsel of one's own choice is neither absolute nor unqualified. *Ex parte Windham*, 634 S.W.2d at 720. That right must be balanced with the trial court's need for prompt, orderly, effective and efficient administration of justice. *United States v. Burton*, 584 F.2d 485, 489 (D.C.Cir.1978), *cert. denied*, 439 U.S. 1069, 99 S.Ct. 837, 59 L.Ed.2d 34 (1979); *Wynne v. State*, 676 S.W.2d 650, 658 (Tex.App.— Fort Worth 1984, pet. ref'd). Thus, the public interest in the fair and orderly administration of justice may be greater than an accused's right to have counsel of his own choice. *Ex parte Windham*, 634 S.W. 2d at 720.

We hold that Appellant waived any complaint regarding the trial court's action in removing Mr. Pink and replacing him with Mr. Freeman when Appellant clearly and unequivocally informed the judge that he accepted Mr. Freeman as his new lead counsel and that he preferred to continue with the trial immediately. Further, we find no abuse of discretion in the trial court's action. Mr. Pink had repeatedly engaged in conduct which necessitated the removal of the jury in order that the court could admonish him. Mr. Pink's actions disrupted and delayed the orderly progress of the trial. The removal of Mr. Pink occurred near the close of the defense's case and Mr. Freeman had been present throughout the trial. The trial court ascertained that Mr. Freeman had sufficient familiarity with the case, trial experience and ability to finish the case, and noted that he had appointed Mr. Freeman on numerous occasions to represent defendants. Although Mr. Freeman had not discussed the case with Appellant prior to the trial, he had drafted a number of pre-trial motions, taken notes throughout the trial and was given the opportunity to request a continuance and to discuss the defense's case with Appellant and Mr. Pink to the extent he deemed it necessary. Moreover, Mr. Freeman represented to the court that he was

adequately prepared to proceed with the case without a continuance. We hold that the trial judge, the Honorable Albert Pruett, exercised remarkable control and judicial decorum in handling an attorney who was more interested in disrupting the orderly process of the trial than in the administration of justice. Such action by Mr. Pink is to be deplored, and the action of Judge Pruett, applauded. Point of error four is overruled.

Appellant filed a post-submission brief in this case raising two additional points of error. Points of error raised by a defendant in a supplemental brief, which were not raised in the original brief, are not properly presented for appellate review. *Coleman v. State*, 632 S.W.2d 616, 619 (Tex.Crim. App.1982); *Holloway v. State*, 695 S.W.2d 112, 120 (Tex.App.—Fort Worth 1985, affirmed); *Flournoy v. State*, 670 S.W.2d 773, 775 (Tex.App.—Fort Worth 1984, pet. ref'd, untimely filed). Appellant's supplemental points of error are overruled.

Accordingly, the judgment of the trial court is affirmed.