AFFIRM; Opinion Filed January 30, 2013.



In The

# Court of Appeals
## Fifth District of Texas at Dallas

No. 05-11-01525-CR

## RAYMUNDO VALDEZ aka REMUNDO ARROYO, Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 2
Dallas County, Texas
Trial Court Cause No. F10-58225-I

# OPINION

Before Justices Lang-Miers, Myers, and Richter[1]
Opinion By Justice Myers

Appellant Raymundo Valdez was convicted of murder and sentenced to life imprisonment.

In two issues, he challenges the sufficiency of the evidence and argues the trial court abused its

discretion by refusing his request for additional time to secure the trial counsel of his choice. We

affirm the trial court's judgment.

### DISCUSSION

### *Sufficiency*

In his first issue, appellant argues the evidence was insufficient to support the murder

conviction because "the non-accomplice evidence was not enough to tend to connect him to the

---

[1] The Honorable Martin E. Richter, retired Justice, sitting by assignment.

offense" as either a primary actor or a party.

In reviewing a challenge to the sufficiency of the evidence, we examine all of the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential element of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.). We defer to the jury's credibility and weight determinations because the trier of fact is the sole judge of the witnesses' credibility and the weight to be given their testimony. *See Jackson*, 443 U.S. at 326.

Appellant was indicted for murder. A person commits murder if he intentionally or knowingly causes the death of an individual, or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1), (2).

The jury was instructed that it could find appellant guilty either as a principal or a party to the offense. A person is criminally responsible as a party to the offense if it is committed by the actor's own conduct, by the conduct of another for which he is criminally responsible, or by both. *Id.* § 7.01(a). A person is criminally responsible for an offense committed by another if, "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2).

The trial court also instructed the jury that Neftali Abonza and Jesus Valdez, both of whom testified at appellant's trial, were accomplice witnesses as a matter of law. An accomplice is a person who participates in the offense before, during, or after its commission with the requisite mental state. *Smith v. State*, 332 S.W.3d 425, 439 (Tex. Crim. App. 2011). According to article 38.14 of the Texas Code of Criminal Procedure, "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the

offense committed." *See* TEX. CODE CRIM. PROC. ANN. art. 38.14. Evidence that merely shows the commission of the offense is not sufficient to corroborate an accomplice's testimony. *Id.*

In conducting a sufficiency review under article 38.14, we must eliminate the accomplice testimony from consideration and then examine the remaining portions of the record to see if there is other evidence that tends to connect the accused with the commission of the crime. *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008). "The appellant's liability as a principal or under a parties theory is of no relevance under an Article 38.14 analysis. The question is whether some evidence 'tends to connect' him to the crime; the connection need not establish the exact nature of his involvement (as a principal or party)." *Joubert v. State*, 235 S.W.3d 729, 731 (Tex. Crim. App. 2007). The corroborating evidence may be direct or circumstantial, and need not be sufficient by itself to establish the defendant's guilt; it is sufficient if the combined weight of the non-accomplice evidence tends to connect the defendant to the offense. *See Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001); *Gosch v. State*, 829 S.W.2d 775, 777 (Tex. Crim. App. 1991). While a defendant's mere presence in the company of the accomplice before, during, or after the commission of the offense is insufficient by itself to corroborate accomplice testimony, evidence of such presence, combined with other suspicious circumstances, may tend to connect the defendant to the offense. *See Dowthitt v. State*, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996); *Cox v. State*, 830 S.W.2d 609, 611 (Tex. Crim. App. 1992). Likewise, evidence that the defendant was in the company of the accomplice at or near the time or place of the offense is proper corroborating evidence that may, when combined with other suspicious circumstances, sufficiently connect the defendant with the offense. *McDuff v. State*, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997); *Dowthitt*, 931 S.W.2d at 249.

The record in this case contains sufficient non-accomplice evidence tending to connect

appellant to the offense. According to the record, Crezcencio Brito was a security guard at the Los Sapitos pool hall and bar in Dallas, Texas. His responsibilities included making sure no one brought weapons into the establishment. At around midnight on July 18, 2010, Brito was standing at the bar's entrance when he saw the complainant, Agustin Valdez, arrive at the bar, then leave at between 1:30 and 1:40 a.m. Brito saw the complainant walk to his truck parked in the parking lot, get in, and start the engine. Brito then turned around and went inside the building because the bar was about to close for the night. As he was walking inside, he heard six gunshots. He turned around and saw appellant running from the driver's side of the complainant's truck with what Brito described as a large "rifle."[2] He also saw Antonio Delapaz, a friend of appellant, approach the complainant's truck and fire a pistol at the truck two times. On cross-examination, Brito added that he saw appellant fire the last of the initial six shots. Appellant and Delapaz fled in a gray Ford Taurus driven by Neftali Abonza.

Brito testified that he had seen appellant, Delapaz, and Abonza together at Los Sapitos prior to the shooting. On the evening of July 17, the three of them met appellant's brother, Jesus Valdez, who was driving a white, four-door Ford F150 pickup truck, at the bar. While he was in the bar, appellant briefly spoke to a man he had gotten into a fight with approximately three months earlier. Appellant asked for a beer but the staff at Los Sapitos refused to serve him because of the trouble he had earlier caused. Brito did not see the complainant, who was sitting on the far side of the bar the entire time, speak to appellant or to any of the other three men, and they left the bar after approximately five minutes. In the bar's parking lot, Brito saw Valdez get out of the pickup truck and speak to appellant, Delapaz and Abonza, who were in the Ford Taurus. Valdez spoke to them

---

[2] When asked if he knew what a shotgun was, Brito replied "no."

-4-

through the driver's side window; Abonza was driving the vehicle. Valdez drove away in the truck followed by appellant, Delapaz, and Abonza in the Taurus. Both vehicles returned to the bar fifteen or twenty minutes later and circled the building.

On cross-examination, Brito admitted he had been deported from the United States to Mexico after being convicted of possession of a controlled substance and operating a stolen vehicle. Brito lived in Mexico at the time of trial. The Dallas County District Attorney's office arranged and paid for his trip to Dallas to testify.

The police found a fired .12 gauge shotgun cartridge and a fired 9 mm pistol cartridge on the ground near the front of the complainant's truck. Multiple fired 9 mm cartridges were also found at the crime scene near the front, passenger side of the truck. A bullet fragment and a "wad" from a spent shotgun shell were found in the street.

The bartender at Los Sapitos provided the Dallas police with the license plate number of the white pickup truck. A check of that license plate number led police to a home in Mesquite, Texas. Later, on the early morning of July 18, after knocking on the door, the police received consent to search the Mesquite residence from Maria Depaz, Antonio Delapaz's sister and the wife of Jesus Valdez. Inside the home, the police found a .12 gauge shotgun and a 9 mm semi-automatic pistol. The pistol was wrapped in a towel that was found in between a mattress and box springs of a bed in the rear bedroom. The shotgun was found behind a cabinet in the living room. As the investigation continued, Delapaz told Dallas Police Department homicide detective Dwayne Thompson that he twice shot a 9 mm handgun into the side of the complainant's truck and saw appellant shoot into the driver's side of the truck twice with a shotgun. Depaz testified that appellant's brother returned to their Mesquite home at around 1:30 or 1:40 a.m. on July 18, followed by Delapaz, Abonza, and appellant.

Dallas County medical examiner Tracy Dyer testified that the complainant suffered two gunshot wounds—a shotgun wound to the head and a gunshot wound to the abdomen. Dyer could not rule out either wound as the cause of death. The complainant had both alcohol and cocaine in his system at the time of his death. During the autopsy, the medical examiner retrieved "birdshot pellets" and "plastic wadding" from the complainant's head and a bullet from his hip. Laura Fleming, a firearms examiner with the Dallas County Crime Lab, testified that the shotgun "wadding" taken from the crime scene and the complainant's body came from the seized .12 gauge shotgun.

Appellant argues the State's case hinges on Brito's testimony, but that Brito's testimony was too unreliable to tend to connect appellant to the offense because it was inconsistent or contradictory regarding, for example, how many shots were fired and where Brito was standing when the shooting started. Appellant also challenges Brito's identification of appellant, noting he saw appellant only once while appellant was, according to Brito, running across the bar's parking lot at night. Nonetheless, Brito's testimony combined with the forensic evidence "tends to connect" appellant to the murder of the complainant. The non-accomplice corroborating evidence in this case may not have been sufficient to prove guilt beyond a reasonable doubt, but it was sufficient for a rational jury to have concluded the corroborating evidence tended to connect appellant to the offense. It was the jury's role as the trier of fact to judge the weight and credibility of the witnesses' testimony. Moreover, having reviewed the evidence under the appropriate standard, we find sufficient evidence from which a rational jury could have found appellant guilty of murder. We overrule appellant's first issue.

## Continuance

In his second issue, appellant contends the trial court violated his constitutional rights by

denying his verbal request for additional time to obtain the "counsel of his choice."

On the day that appellant's case was called for trial, shortly before the start of jury selection, appellant told the trial court he wanted additional time to obtain another attorney because did not want to proceed with his appointed counsel. According to the record, after appellant told the court he had "a right to have another attorney because now I want another attorney," the court replied:

> Okay. Well, we have a jury out in the hallway, so if your family can hire an attorney in the next three minutes, that's fine, but [defense counsel] sat through the trial of your, co-defendant all last week and watched all the testimony, and it's been typed up for him, and he's reviewed it, so he's ready to go today. He's got a lot of experience, so unfortunately, if you wanted to hire another attorney, you should have done that about a year ago or last week.

When appellant reiterated his desire for another attorney, the court told appellant he had "the right to hire whatever attorney you want" but "you elected not to hire an attorney until the jury was out in the hallway, and it's too late." Appellant then complained that his attorney "never went to see me or anything" and "never explained anything about my case." Counsel replied:

> Perhaps my client will acknowledge I have sent the investigator to visit with you, he's gotten facts and followed up on those, and I have been back there outlining what the [S]tate's case is and what I believe the evidence will show.

Appellant again told the court he needed "to change attorneys," after which the court said, "Well, it's too late. Unless you can get an attorney in here in the next minute or two, we're going to be bringing the jury in. It's too late." At the conclusion of the guilt-innocence phase of the trial, appellant's appointed counsel questioned appellant as follows:

> [DEFENSE COUNSEL]: Judge, if we're on the record, I just want to make sure that my client is satisfied with the representation because if there's anything that my client wants me to do that I haven't done, you know, I would certainly like to know about that right now.
>     Mr. Valdez, is there anything else that you need for me to do on this case that I have not done?
>
> THE DEFENDANT (THROUGH THE INTERPRETER): Everything is fine.

–7–

[DEFENSE COUNSEL]: Okay. So you are satisfied with my representation?

THE DEFENDANT (THROUGH THE INTERPRETER): Yes.

THE COURT: All right.

[DEFENSE COUNSEL]: Okay. And I know there was some concern earlier that I had not, you know, had an investigation done or, you know, wasn't prepared for trial. But I think you've seen, you know, that I was very prepared for trial. We did have an investigation, and I was quite familiar with the facts. And I sat through the trial last week. So I was very, very prepared for it.

Motions for continuance that are not in writing and not sworn to preserve nothing for review. *See* TEX. CODE CRIM. PROC. ANN. art. 29.03; *Dewberry v. State,* 4 S.W.3d 735, 755 (Tex. Crim. App. 1999); *accord Anderson v. State,* 301 S.W.3d 276, 279 (Tex. Crim. App. 2009); *Sumrell v. State,* No. 05-09-00238-CR, 2010 WL 3123302, at *3 (Tex. App.—Dallas Aug. 10, 2010, pet. ref'd) (not designated for publication). Appellant's request for additional time to obtain another attorney was neither sworn to nor written. As a result, he failed to preserve his issue for appellate review.

But even if we were to conclude appellant's issue was preserved for our review, there was no abuse of discretion. The right to counsel is not absolute. *Ex parte Windham,* 634 S.W.2d 718, 720 (Tex. Crim. App. 1982) (right to counsel of one's own choice is neither absolute nor unqualified). That right must be balanced against the trial court's need for the prompt, orderly, effective, and efficient administration of justice. *Emerson v. State,* 756 S.W.2d 364, 369 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd). Moreover, a defendant's right to select his own counsel cannot be manipulated so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice. *Ex parte Davis,* 818 S.W.2d 64, 66 (Tex. Crim. App. 1991); *Webb v. State,* 533 S.W.2d 780, 784 (Tex. Crim. App. 1976). A defendant may not wait until the eve of trial to demand different counsel or request counsel be dismissed so that he may retain other counsel. *Webb,* 533 S.W.2d at 784. The defendant also carries the burden of proving he is entitled

to a change of counsel. *Malcom*, 628 S.W.2d at 791.

The Texas Court of Criminal Appeals has identified a number of factors that can be weighed in determining whether a continuance was properly denied in this situation: (1) the length of the delay requested; (2) whether other continuances were requested and whether they were denied or granted; (3) the length of time in which the accused's counsel had to prepare for trial; (4) whether another competent attorney was prepared to try the case; (5) the balanced convenience or inconvenience to the witnesses, the opposing counsel, and the trial court; (6) whether the delay was for legitimate or contrived reasons; (7) whether the case was complex or simple; (8) whether the denial of the motion resulted in some identifiable harm to the defendant; and (9) the quality of the legal representation actually provided. *Windham*, 634 S.W.2d at 720. We will not reverse a trial court's decision to deny a motion for continuance unless the court has abused its discretion. *Vasquez v. State*, 67 S.W.3d 229, 240 (Tex. Crim. App. 2002).

The majority of the relevant *Windham* factors support the trial court's ruling. We first note that appellant requested an unspecified and uncertain delay of the trial. As for continuances, there is no indication in the record that any motions for continuance had previously been granted, yet the case had been on the court's docket, and appellant had been incarcerated awaiting trial, since July of 2010. Appellant did not raise the issue of postponing trial for the purpose of securing of new counsel until the case was called for trial, on November 2, 2011, when prospective jurors were waiting "out in the hallway" for the commencement of voir dire. Appellant's appointed counsel, who was appointed to the case on July 27, 2010, told the court he was prepared to go to trial. A total of nine witnesses testified for the State. The record also shows that defense counsel observed the trial of appellant's co-defendant and sent an investigator to visit appellant and gather facts. Appellant offers no evidence to rebut defense counsel's assertion that he was prepared to go to trial,

–9–

nor does appellant allege ineffective assistance of counsel. Given the impending trial setting, the trial court could have balanced these factors and concluded a continuance would be inappropriate. We discern no abuse of discretion in the court's ruling. We overrule appellant's second issue.

We affirm the trial court's judgment.

_____
LANA MYERS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
111525F.U05



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

RAYMUNDO VALDEZ aka REMUNDO ARROYO, Appellant

No. 05-11-01525-CR      V.

THE STATE OF TEXAS, Appellee

Appeal from the Criminal District Court No. 2 of Dallas County, Texas. (Tr.Ct.No. F10-58225-I).

Opinion delivered by Justice Myers, Justices Lang-Miers and Richter participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered January 30, 2013.

_____
LANA MYERS
JUSTICE