Juan Manuel **GUERRERO**, Appellant,

v.

The **STATE** of Texas, Appellee

No. 10–00–217–CR.

Court of Appeals of Texas, Waco.

Aug. 8, 2001.

---

John R. Friesell, Bellaire, for appellant.

Jeri Yenne, Brazoria County District Attorney, Angleton, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## ABATEMENT ORDER

PER CURIAM.

■ Juan Manuel Guerrero entered a nonnegotiated guilty plea to possession of a controlled substance with intent to deliver. After a presentence investigation, the court sentenced Guerrero to eight and one-half years' imprisonment. Guerrero's appellate counsel filed an *Anders* brief.[1]  *See Anders v. California,* 386 U.S. 738, 744, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493, 498 (1967). Guerrero has filed a *pro se* response. *See Wilson v. State,* 955 S.W.2d 693, 696–97 (Tex.App.—Waco 1997, order), *disp. on merits,* 3 S.W.3d 223 (Tex.App.—Waco 1999, pet. ref'd). The State has likewise responded. *Id.* at 697. We now decide "whether the case is wholly frivo-

---

1. Counsel also filed a motion to withdraw which we have dismissed because this Court does not have the authority to permit appointed counsel to withdraw. *See Sowels v. State,* 45 S.W.3d 690, 692–93 (Tex.App.—Waco 2001, no pet. h.) (citing *Enriquez v. State,* 999 S.W.2d 906, 908 (Tex.App.—Waco 1999, order, no pet.)).

lous" as claimed by counsel. *See Taulung v. State*, 979 S.W.2d 854, 855 (Tex.App.—Waco 1998, no pet.) (quoting *Anders*, 386 U.S. at 744, 87 S.Ct. at 1400, 18 L.Ed.2d at 498).

## BACKGROUND

The indictment alleges that Guerrero intentionally and knowingly possessed cocaine in the amount of 4 grams or more, but less than 200 grams, with the intent to deliver said substance. According to the record, narcotics officers executed a search warrant at a residence owned by Guerrero's co-defendant Nestor Gonzales on May 14, 1999. When Guerrero and Gonzales saw the officers, they "first attempted to run away but quickly complied with ... instructions to halt." Guerrero had a plastic bag in his left-rear pocket which held 13 smaller bags containing a combined 8.99 grams of cocaine. In a building behind the residence, the officers located a cooler which contained 1 pound of marihuana and 2 bricks of cocaine having a combined weight of 4.89 pounds (2,215 grams).

One month after his arrest, Guerrero gave a written confession. In the written confession, Guerrero acknowledged that he was given the warnings required by article 38.22, section 2 of the Code of Criminal Procedure.[2] *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2 (Vernon 1979). Guerrero stated in his confession that he had known his co-defendant Gonzales "for the past 4 to 5 years" and Gonzales had been selling drugs since he first knew him. Guerrero went to work at Gonzales's bar after he injured his hand and could no longer work his construction job. Guerre-ro moved into Gonzales's home at the latter's invitation.

According to Guerrero:

Nestor Gonzales would give me small amounts of cocaine so that I could sell for him at the bar. I would give Nestor Gonzales all the money I made from the cocaine and he would pay me $20.00 per day for working at his bar.

I know that Nestor Gonzales was moving a lot of cocaine and marijuana because I would see the bricks of marijuana and cocaine at Nestor's house. Nestor Gonzales sold his drugs to several different people. Nestor Gonzales would deliver the drugs to people who bought or if he trusted them Nestor would let them come over to his house to buy the drugs.

Guerrero continued by describing how Gonzales had come into possession of the two bricks of cocaine seized by the officers and how Gonzales had instructed him to put the bricks in the cooler.

Guerrero is a citizen of Mexico. With his appointed trial counsel and an interpreter, Guerrero signed a plea document containing various admonishments and waivers and a judicial confession. The plea document contains all but one of the admonishments required by article 26.13(a). *See* TEX. CODE CRIM. PROC. ANN. art. 26.13(a) (Vernon Supp.2001). The court failed to admonish Guerrero orally or in writing that, if convicted of certain sex crimes, he would be required to register as a sex offender.[3] *Id.* art. 26.13(a)(5).

By signing this document, Guerrero attested that the court had "admonished and warned" him in accordance with article

**2.** Unless otherwise indicated, the term "article" as used hereinafter refers to an article of the Code of Criminal Procedure.

**3.** Subsection (a)(5), which requires a court to inform a defendant that if he is convicted of a sex crime he will be required to register as a sex offender, took effect on September 1, 1999. *See* Act of May 29, 1999, 76th Leg., R.S., ch. 1415, § 33, 1999 Tex. Gen. Laws 4831, 4843.

26.13(a) (with the one exception noted) and that the court had "admonished and warned" him of his rights: to a grand jury indictment; to a jury trial; to a 10–day preparation period; to confront and cross-examine the witnesses against him; against self-incrimination; and to a pre-sentence investigation and report. Guerrero waived each of these rights in writing. He also stated that he was mentally competent and freely and voluntarily making his plea; that he had a 6th grade education; and that he could not read, write or understand the English language. Guerrero's plea papers conclude with the following statement: "I understand the admonitions, statements and waivers set forth above and I am aware of the consequences of my plea."

Guerrero's trial counsel signed a statement indicating that he had explained Guerrero's rights to him and that he believed Guerrero was sane and understood the nature and consequences of his plea.[4]

Through Guerrero's attorney and the interpreter, the court orally reviewed the admonishments required by article 26.13(a) (with the exception noted) and the rights Guerrero was waiving. He stated that he understood each of the admonishments and rights and was waiving them freely, voluntarily, and without coercion. Guerrero also stated that he understood that, because he was pleading without a recommendation from the State, the court could sentence him anywhere within the punishment range provided for the offense and that no one had represented to him that the court would assess any particular punishment. After accepting Guerrero's guilty plea and the State's evidence, the court ordered a presentence investigation.

At the sentencing hearing, the State asked that the court impose a lengthy sentence because Guerrero refused to testify against his co-defendant even after being offered immunity. Guerrero's counsel asked the court to consider community supervision. Counsel suggested to the court that Guerrero had refused to testify because he feared reprisals from those involved in this "very high-priced sophisticated operation that he got involved in." The court rejected Guerrero's request for community supervision.

## POTENTIAL ISSUES

Guerrero's appellate counsel identifies four potential issues in his brief. In these issues, counsel reviews: (1) the voluntariness of Guerrero's plea; (2) whether any jurisdictional defects occurred prior to entry of the plea; (3) whether the prosecutor's argument at sentencing violated Guerrero's constitutional and statutory privileges against self-incrimination; and (4) whether the failure of Guerrero's trial counsel to object to this argument constitutes ineffective assistance of counsel.

Guerrero presents six issues in his *pro se* response. He contends that: (1) his sentence is too harsh; (2) he had no knowledge of the marihuana and cocaine found in the cooler; (3) his guilty plea was involuntary; (4) his trial counsel misled him about the sentence he would receive; (5) his confession was involuntary; and (6) he was denied counsel during the interrogation which yielded his confession.

■ The State contends that Guerrero's *pro se* response should be disregarded because he does not provide record references or citations to supporting legal authorities. However, this Court has determined that such a response need not comply with the briefing requirements of the appellate rules. *See Coronado v. State*, 996 S.W.2d 283, 285 (Tex.App.—

---

4. Guerrero's trial counsel stated on the record that he is fluent in Spanish.

Waco 1999, order), *disp. on merits*, 25 S.W.3d 806 (Tex.App.—Waco 2000, pet. ref'd); *Wilson*, 955 S.W.2d at 697. Accordingly, we will address the issues raised in Guerrero's response.

## THE CONFESSION

■ Guerrero contends in his fifth issue that his confession was involuntary because his cell mate continually "chased," confused, and frightened him until he finally confessed. He argues in his sixth issue that his confession is invalid because he was denied counsel during the interrogation which yielded the confession. His counsel suggests in counsel's second potential issue that by pleading guilty Guerrero waived the right to complain about the propriety of his confession.

Counsel would be correct if the *Helms* rule were still the law in Texas. *See Helms v. State*, 484 S.W.2d 925, 927 (Tex. Crim.App.1972). According to *Helms*, "Where a plea of guilty is voluntarily and understandingly made, all non-jurisdictional defects including claimed deprivation of federal due process are waived." *Id.* However, the Court of Criminal Appeals sharply limited *Helms* in a recent decision. *See Young v. State*, 8 S.W.3d 656, 666–67 (Tex. Crim.App.2000). The Court set forth the following rule for raising appellate claims following a plea of guilty or nolo contendere:

> Whether entered with or without an agreed recommendation of punishment by the State, a valid plea of guilty or nolo contendere "waives" or forfeits the right to appeal a claim of error only when the judgment of guilt was rendered independent of, and is not supported by, the error. In addition, if the appeal is from a judgment rendered on the defendant's plea of guilty or nolo contendere under Code of Criminal Procedure article 1.15, and the punishment

assessed did not exceed the punishment recommended by the prosecutor and agreed to by the defendant, the substance of the appeal must have been raised by written motion and ruled on before trial (unless the appeal is for a jurisdictional defect or the trial court granted permission to appeal).

*Id.; see also Daw v. State*, 17 S.W.3d 330, 333 n. 2 (Tex.App.—Waco 2000, no pet.).

Because Guerrero pleaded guilty without the benefit of a plea recommendation, Rule of Appellate Procedure 25.2(b)(3) and the latter part of the *Young* test requiring a written pre-trial motion, a jurisdictional defect, or trial court permission do not apply. *See Jack v. State*, 871 S.W.2d 741, 744 (Tex.Crim.App.1994) (applying predecessor to Rule 25.2(b)(3)). Additionally, we cannot say that Guerrero's conviction "was rendered independent of, and is not supported by, [his confession]." *Young*, 8 S.W.3d at 667. Thus, Guerrero did not waive the right to complain about the propriety of his confession by pleading guilty.

■ The Eighth Court of Appeals has determined that a challenge to the voluntariness of a confession can present an arguable issue for *Anders* purposes. *See Tellez v. State*, 880 S.W.2d 247, 248 (Tex. App.—El Paso 1994, order). As the *Tellez* court did, we conclude that the facts surrounding the making of the challenged confession present an issue of arguable merit. *Id.*

## THE PLEA

■ In his first issue, Guerrero's appellate counsel reviews Guerrero's guilty plea and concludes that it was made voluntarily. Guerrero's third and fourth *pro se* issues challenge the voluntariness of his plea. Guerrero contends that he was confused about the nature of the proceedings, that he pleaded guilty because he feared a harsh sentence from a jury, and because

his trial counsel represented to him that he would "fight" to get Guerrero five years' community supervision.

This Court has recently evaluated the voluntariness of a defendant's guilty plea in the *Anders* context. *See Coronado*, 996 S.W.2d at 287. We concluded that the defendant's challenge to the voluntariness of his guilty plea raised an arguable issue. *Id.* We likewise conclude that Guerrero's challenge to the voluntariness of his plea presents an issue of arguable merit.[5]

## CONCLUSION

■ We have concluded that Guerrero's appeal presents issues of arguable merit. Accordingly, we abate Guerrero's appeal for the appointment of new counsel.[6] *Id.* at 287; *see also Penson v. Ohio*, 488 U.S. 75, 83–84, 109 S.Ct. 346, 351–52, 102 L.Ed.2d 300, 310–11 (1988) ("The Court of Appeals' determination that arguable issues were presented by the record … created a constitutional imperative that [new] counsel be appointed."); *Stafford v. State*, 813 S.W.2d 503, 511 (Tex.Crim.App. 1991) ("if the Court of Appeals does find that there are arguable grounds, the appellate court must then guarantee appellant's right to counsel by ensuring that *another attorney* is appointed to represent appellant"). The court's order appointing new appellate counsel shall be filed with the Clerk of this Court in a supplemental clerk's record within fifteen (15) days after the date of this Order. Counsel's brief shall be due within thirty (30) days after appointment. *Id.*

---

5. Our decision should not be viewed as a determination of the merits of the issues presented by Guerrero and his counsel. His new counsel should personally review the record to determine what issues should be raised in this appeal. *See Coronado v. State*, 996 S.W.2d 283, 287 n. 4 (Tex.App.—Waco 1999, order), *disp. on merits*, 25 S.W.3d 806 (Tex. App.—Waco 2000, pet. ref'd).

GRAY, Justice, dissenting.

Before the State accepts the holding of the majority that *new* counsel must be appointed, the Court of Criminal Appeals should have the opportunity to review the holding in light of *Smith v. Robbins. Smith v. Robbins*, 528 U.S. 259, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). The majority "jumps-the-gun" in at least two ways. First, even before counsel has reviewed the confession to reach a conclusion that it could be argued as being involuntary, the majority reaches that conclusion; and what counsel decides becomes irrelevant. Second, we tell the trial court that new counsel must be appointed to represent the defendant before it has been determined that appellate counsel cannot zealously represent his client.

With regard to the first issue, it is clear from the recitation of facts in the majority opinion that appointed counsel did not evaluate the voluntariness of the confession. This oversight was because, in reliance on the *Helms* rule, counsel determined that Guerrero had waived any error which may have occurred prior to the entry of his guilty plea. *Helms v. State*, 484 S.W.2d 925, 927 (Tex.Crim.App.1972). But as the majority notes, the *Helms* rule has been modified by *Young. Young v. State*, 8 S.W.3d 656, 666–667 (Tex.Crim.App. 2000). It is obvious from his brief that counsel failed to note the modification of the rule. Thus, counsel has never evaluated whether the voluntariness of the confession is an issue of arguable merit.

---

6. Assuming the trial court has not already permitted Guerrero's present appellate counsel to withdraw, we note that counsel must file a motion to withdraw with that court. *See Sowels*, 45 S.W.3d at 692.

The brief must "contain a professional evaluation of the record demonstrating why, in effect, there are no arguable grounds to be advanced." *High v. State*, 573 S.W.2d 807, 812 (Tex.Crim.App.1978). Because of counsel's belief that the *Helms* rule prevented this Court's consideration of issues that occurred prior to the entry of the plea, including the voluntariness of the confession, the brief evidences a failure to conduct a professional evaluation of the entire record in search of issues of arguable merit. Just as we did in *Beard*, we should set aside the submission of this case and order that counsel rebrief the case with the additional guidance on the proper application of the modified *Helms* rule. *See Beard v. State*, No. 10–01–040–CR (Tex.App.—Waco July 18, 2001, order)(not designated for publication).

Next, even if we properly determined there is an issue of arguable merit, we should not remand with the instruction to appoint *new* counsel, rather we should advise appellate counsel appointed by the trial court of the issues of arguable merit that we have identified and which must be briefed. If, for any reason, counsel is unable to zealously represent the appellant on the issues that we have identified, and any other issue which comes to counsel's attention while conducting the additional briefing, counsel may file a motion to withdraw with the trial court so that new counsel may be appointed to zealously represent the appellant.

This is in stark contrast to the prior procedure that required appointment of new counsel once appellate counsel determined that the appeal was frivolous. *Wilson v. State*, 955 S.W.2d 693, 698 (Tex. App.—Waco 1994, order). We based the prior procedure on the Court of Criminal Appeals' interpretation of *Anders* in the *Stafford* case. In *Stafford*, the Court stated:

As we read *Anders*, counsel filing a frivolous brief must be allowed to withdraw from the case and consequently cannot be ordered to argue grounds that she had previously determined to be without merit.

*Stafford v. State*, 813 S.W.2d 503, 511 (Tex. Crim.App.1991). The same Court however had, prior to the decision in *Anders*, indicated that in this situation the trial court should not let appointed counsel withdraw unless other counsel was appointed, thus implying that the original counsel could continue to represent the appellant. *High v. State*, 573 S.W.2d 807, 811 (Tex.Crim. App. [Panel Op.] 1978).

In *Smith v. Robbins*, the United States Supreme Court made it clear that *Anders* did not require the appointment of new counsel. *Smith v. Robbins*, 528 U.S. 259, 265, 120 S.Ct. 746, 753, 145 L.Ed.2d 756, 767 (2000). The Supreme Court went to great pains to tell us that the holding in *Anders* was not the only constitutionally permitted method of dealing with frivolous appeals of indigents in criminal cases. The Court obviously was concerned about the number of courts that had viewed *Anders* as the only constitutionally accepted method. The Court of Criminal Appeals and this Court were no exceptions. It is clear in *Stafford* that the Court of Criminal Appeals read *Anders* as a constitutional requirement to appoint new counsel. Now it is clear that it is not. As the Court stated in *Smith*:

In *Pennsylvania v. Finley*, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987), we explained that the *Anders* procedure is not "an independent constitutional command," but rather is just "a prophylactic framework" that we established to vindicate the constitutional right to appellate counsel announced in *Douglas*. 481 U.S. at 555, 107 S.Ct. 1990. We did not say that our *Anders* procedure was

the only prophylactic framework that could adequately vindicate this right; instead, by making clear that the Constitution itself does not compel the *Anders* procedure, we suggested otherwise.

\* \* \*

Finally, any view of the procedure we described in the last section of *Anders* that converted it from a suggestion into a straitjacket would contravene our established practice, rooted in federalism, of allowing the States wide discretion, subject to the minimum requirements of the Fourteenth Amendment, to experiment with solutions to difficult problems of policy. In *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), which we invoked as the foundational case for our holding in *Anders, see Anders*, 386 U.S. at 741, 87 S.Ct. 1396, we expressly disclaimed any pretensions to rulemaking authority for the States in the area of indigent criminal appeals. We imposed no broad rule or procedure but merely held unconstitutional Illinois's requirement that indigents pay a fee to receive a trial transcript that was essential for bringing an appeal. Justice Frankfurter, who provided the necessary fifth vote for the holding in *Griffin*, emphasized that it was not for this Court "to tell Illinois what means are open to the indigent and must be chosen. Illinois may prescribe any means that are within the wide area of its constitutional discretion" and "may protect itself so that frivolous appeals are not subsidized and public moneys not needlessly spent." *Griffin*, 351 U.S. at 24, 76 S.Ct. 585 (opinion concurring in judgment). He added that while a State could not "bolt the door to equal justice," it also was not obliged to "support a wasteful abuse of the appellate process." *Ibid.* The Griffin plurality shared this view, explaining that the Court was not holding "that Illinois must purchase a stenographer's transcript in every case where a defendant cannot buy it. The Supreme Court [of Illinois] may find other means of affording adequate and effective appellate review to indigent defendants." *Id.*, at 20, 76 S.Ct. 585.

In a related context, we stated this basic principle of federalism in the very Term in which we decided *Anders*. We emphatically reaffirmed that the Constitution "has never been thought [to] establish this Court as a rule-making organ for the promulgation of state rules of criminal procedure." *Spencer v. Texas*, 385 U.S. 554, 564, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967) (citing, *inter alia, Griffin, supra* ). *Accord Medina v. California*, 505 U.S. 437, 443–444, 447–448, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992). Justice Stewart, concurring in *Spencer*, explained further:

"If the Constitution gave me a roving commission to impose upon the criminal courts of Texas my own notions of enlightened policy, I would not join the Court's opinion. . . . [But][t]he question is whether those procedures fall below the minimum level the Fourteenth Amendment will tolerate. Upon that question, I am constrained to join the opinion and judgment of the Court." 385 U.S. at 569, 87 S.Ct. 648 (concurring opinion).

\* \* \*

In short, it is more in keeping with our status as a court, and particularly with our status as a court in a federal system, to avoid imposing a single solution on the States from the top down. We should, and do, evaluate state procedures one at a time, as they come before us, *see Murray [v. Giarratano*, 492 U.S. 1]*, supra*, at 14, 109 S.Ct. 2765[, 106 L.Ed.2d 1 (1989)], while leaving "the more challenging task of crafting appropriate procedures . . . to the laboratory

of the States in the first instance." *Cruzan v. Director, Mo. Dept. of Health,* 497 U.S. 261, 292, 110 S.Ct. 2841, 111 L.Ed.2d 224 (1990) (O'CONNOR, J., concurring) (citation and internal quotation marks omitted). We will not cavalierly "imped[e] the States' ability to serve as laboratories for testing solutions to novel legal problems." *Arizona v. Evans,* 514 U.S. 1, 24, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995)(GINSBURG, J., dissenting). Accordingly, we hold that the *Anders* procedure is merely one method of satisfying the requirements of the Constitution for indigent criminal appeals. States may—and, we are confident, will—craft procedures that, in terms of policy, are superior to, or at least as good as, that in *Anders.* The Constitution erects no barrier to their doing so.

*Smith,* 120 S.Ct. at 757–759.

In *Smith,* the United States Supreme Court validated a procedure that would allow the issues identified by the court to be briefed by the same counsel that had filed a *Wende* brief, notwithstanding that the filing of a *Wende* brief implied a determination by counsel that the appeal was frivolous. *Id.* at 753 (citing *People v. Wende,* 25 Cal.3d 436, 441–442, 600 P.2d 1071, 1074–1075, 158 Cal.Rptr. 839 (1979)).

The *Wende* procedure was adopted by the California Supreme Court to deal with the situation in appeals by indigent criminal defendants when appointed counsel had determined that the appeal was frivolous. The United States Supreme Court, while validating the procedure, recognized the dilemma in which counsel was placed between zealously representing the client and the duty to not file frivolous appeals taking up precious judicial resources.

In this case I likewise recognize the waste of taxpayer funds by sending this case back to the trial court with an instruction that new counsel must be appointed. The taxpayers of Brazoria County have already paid for an attorney to review the trial court proceeding and evaluate the merits of an appeal. That is the attorney that can most efficiently file a brief on the issues identified by this Court. We should not require the taxpayers to pay yet another attorney to do all the work necessary to again review the entire case when there is no constitutional or statutory prohibition preventing the original appointed appellate attorney from doing the additional briefing.

As noted by the majority we have determined that we do not have the authority to grant counsel's motion to withdraw. *Enriquez v. State,* 999 S.W.2d 906, 908 (Tex. App.—Waco 1999, order, no pet.). We have applied this holding in the context of *Anders. Sowels v. State,* 45 S.W.3d 690, 692 (Tex.App.—Waco 2001, no pet. h.). After a number of cases holding to the same effect, the First Court of Appeals reversed themselves and reverted to utilizing the rule from *Stafford. Stephens v. State,* 35 S.W.3d 770, 771 (Tex.App.—Houston [1st Dist.] 2000, no pet.) (overruling *Guzman v. State,* 23 S.W.3d 381 (Tex. App.—Houston [1st Dist.] 1999, no pet.)). If the majority is right that *Stafford* is the constitutionally required procedure, notwithstanding *Stafford's* reliance on the interpretation of *Anders* that the United States Supreme Court has told us is improper, then the majority errs in holding that we do not have the authority to grant counsel's motion to withdraw because that is what the Court of Criminal Appeals told us to do in *Stafford. See also Wilson v. State,* 40 S.W.3d 192 (Tex.App.—Texarkana 2001, no pet.).

Finally, a word about the holding of this case. When the discussion regarding the "challenge" to the voluntariness of the confession and the making of an open plea is

analyzed closely, a careful reader will note that an *Anders* brief is improper because an attorney or the client can always make voluntariness an issue of arguable merit. This is untenable. These issues must be analyzed in light of the appellate record. If the appellate record does not contain some indication that the confession or plea may have been involuntary, the appeal of these issues is frivolous. In this case, the majority is not relying on the appellate record to "identify" an arguable issue, as the reviewing lawyer is required to do. Rather, the majority relies on the comments in the defendant's pro se brief or response. These comments are outside the appellate record. They may ultimately provide grounds for an attack on the judgment by habeas corpus, but not by direct appeal.

The real losers as a result of the process we apply today include not only the taxpayers of Brazoria County that must fund yet another review of this entire case, but every citizen of Texas. This resolution not only delays the ultimate disposition of this case, but it also consumes judicial resources that could be devoted to the disposition of cases that have merit. Having reviewed the entire record in this case and finding no issue of arguable merit, I would affirm the conviction. As an alternative, I would set aside the submission of this case and order appellate counsel to evaluate the entire record and prepare another brief for this Court in light of the modified *Helms* rule. Because the majority does not, I respectfully dissent.