John Patrick BRINK, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 14–00–01439–CR, 14–00–01440–CR.

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 6, 2001.

Rehearing Overruled June 6, 2002.

Brian W. Wice, Houston, for appellants.

Rikke Burke Graber, Houston, for appellees.

Panel consists of Justices ANDERSON, HUDSON, and FROST.

## OPINION

J. HARVEY HUDSON, Justice.

Appellant John Patrick Brink was charged in separate indictments with the offenses of securities fraud and misapplica-

tion fiduciary funds. Appellant pled guilty to both offenses without the benefit of a plea bargain agreement. The trial court found appellant guilty and assessed his punishment at confinement in the state penitentiary for 60 years for each offense—the sentences to run concurrently. On appeal, appellant alleges he was denied the right to counsel of his choice, as well as the right to effective assistance of counsel. We affirm.

## I. Factual And Procedural Background

The State alleged in its indictments that appellant fraudulently sold investment contracts to several individuals and knowingly misapplied $200,000 in funds, which he held as a fiduciary. By agreement of the parties, a jury trial was set for May 15, 2000. On April 28, appellant's retained attorney, George Parnham, filed a motion raising concerns about possible conflicts of interest relating to his representation of appellant. The trial court immediately held a hearing to develop the issue. Parnham advised the court of several potential conflicts, the most serious being that he had previously represented Mary Gipp, one of the State's key witnesses.

Ms. Gipp was one of appellant's employees at all times material to the indictments. As one of appellant's employees, she was apparently privy to information very helpful to the prosecution. Parnham advised the court that he had previously represented Gipp when she and her boyfriend became involved in a solicitation to commit capital murder. Gipp was never charged with an offense because Parnham successfully negotiated a deal with the State in which she received full immunity in exchange for her testimony in three capital murder trials.

Parnham advised the court that, once he realized Gipp was going to testify for the State, he began to wonder whether he had a conflict of interest. Parnham said his specific concern was that in cross-examining Gipp, he might challenge her credibility based on confidential information he had acquired while serving as her attorney.[1] Parnham also informed the court he had discussed the issue with both appellant and another attorney, Don Lambright, who, if necessary, could serve as appellant's trial counsel. With counsel's permission, the trial court examined appellant and asked if he had made arrangements to retain Lambright. Appellant told the court that he would contact Lambright as soon as possible.

Without objection from either Parnham or appellant, the court removed Parnham as counsel due to the conflict of interest. The court then scheduled a hearing for the purpose of substituting new counsel on the following Monday. The court also instructed appellant to retain counsel on or before the hearing.

---

1. In addition to this conflict, Parnham apprised the court of two other conflicts. First, he told the court that he had been supoenaed by the State to testify regarding the chain of custody of certain business records surrendered by Parnham to the grand jury in response to a grand jury subpoena. Second, while charges were pending against appellant, his company Energy Service Company, Inc., filed for bankruptcy. As a result, the trustee in bankruptcy filed suit against all those who had received money from Energy Service Company, including Parnham.

Both of these potential conflicts were minimized by Parnham and the prosecutor. Parnham agreed to voluntarily turn over the subpoenaed business records to the prosecutor's investigator and waive any challenge to the chain of custody when the State offered the records at trial. Moreover, Parnham also alleviated the other conflict by returning to the bankruptcy trustee all funds he had received. Accordingly, the only significant conflict relates to Parnham's representation of Gipp.

When the parties returned on Monday, the trial court learned appellant had not yet retained Lambright as counsel. The court immediately revoked appellant's bond and began exploring the possibility of appointing counsel for appellant. With the trial only two weeks away, Lambright was reluctant to take the case. Noting Lambright's concern, the court agreed to reset the trial until July 31, 2000. Appellant then retained Lambright as counsel, and the court reinstated his bond.

On July 14, 2000, with Lambright as his counsel, appellant pled guilty in both cases without an agreed recommendation as to punishment. After a presentence investigation, the trial court conducted a punishment hearing. At the conclusion of the hearing, the court assessed appellant's punishment at confinement in the penitentiary for a term of 60 years in both cases.

## II. ISSUES AND ANALYSIS

### A. Right to Counsel of Choice

In his first two issues, appellant contends the trial court erred in removing his counsel of choice in violation of both the Sixth Amendment to the United States Constitution and Article I, Section 10, of the Texas Constitution.

■ The right of an accused in a criminal proceeding to the assistance of counsel is guaranteed by the constitutions of both the United States and Texas. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10. Moreover, an accused "should be afforded a fair opportunity to secure counsel of his own choice." *Powell v. Alabama*, 287 U.S. 45, 53, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *see also Stearnes v. Clinton*, 780 S.W.2d 216, 222 (Tex.Crim.App.1989). However, the right to counsel of one's own choice is neither absolute nor unqualified. *Ex parte Windham*, 634 S.W.2d 718, 720 (Tex.Crim.App.1982). That right must be balanced with the trial court's need for prompt, orderly, effective, and efficient administration of justice. *Emerson v. State*, 756 S.W.2d 364, 369 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd.).

### 1. Waiver of all non-jurisdictional error

■ As a preliminary issue, the State contends this issue, as well as all other non-jurisdictional error, was waived when appellant pled guilty without the benefit of a plea bargain agreement. Formerly, it was well established in this state that if a defendant entered a plea of guilty or nolo contendere without the benefit of a plea bargain agreement, he waived all non-jurisdictional error. *Flowers v. State*, 935 S.W.2d 131, 133 (Tex.Crim.App.1996); *Helms v. State*, 484 S.W.2d 925, 927 (Tex. Crim.App.1972). However, the Court of Criminal Appeals recently modified the *Helms* Rule in *Young v. State*, 8 S.W.3d 656, 666 (Tex.Crim.App.2000). Now, a valid plea of guilty " 'waives' or forfeits the right to appeal a claim of error only when the judgment of guilt was rendered independent of, and is not supported by, the error." *Id.* at 667. Here, the State contends appellant's plea was rendered independent of the error, and, thus, any error regarding the removal of counsel has been waived.

*Helms* was derived from federal precedent, and in federal jurisprudence a plea of guilty is much more than a mere admission; "it is itself a conviction." *Kercheval v. United States*, 274 U.S. 220, 223, 47 S.Ct. 582, 71 L.Ed. 1009 (1927). "Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence." *Id.* In Texas, however, a guilty plea in a bench trial is not conclusive. Despite the defendant's plea, it is still necessary for the State to introduce evidence into the record

showing the guilt of the accused. Tex. Code Crim. Proc. Ann. art. 1.15 (Vernon Supp.2001). Because the significance of a guilty plea is different under federal and state law, the Court of Criminal Appeals concluded it erred in incorporating federal precedent into this realm of Texas jurisprudence. *Young,* 8 S.W.3d at 661–62.

The issue in a criminal trial is whether the prosecution can, by legally admissible evidence, prove its allegations of criminal conduct beyond any reasonable doubt. Thus, two fundamental questions are presented in every criminal case: (1) does the prosecution have sufficient evidence of guilt to convince the trier-of-fact beyond a reasonable doubt; and (2) is the evidence legally admissible.

In federal jurisprudence, a defendant's guilty plea ordinarily satisfies both questions. First, the plea of guilt admits every element of the offense and completely satisfies the prosecution's burden. Second, because the plea is conclusive as to guilt, the conviction rests solely upon the plea; questions regarding the admissibility of other evidence the prosecution may have intended to use are rendered moot. Thus, in federal jurisprudence it is "well settled that by entering a plea of guilty, a defendant ordinarily waives all non-jurisdictional defects in the proceedings below." *United States v. Bell,* 966 F.2d 914, 915 (5th Cir.1992).

■ In contrast, under Texas law a defendant's guilty plea does not prove up the guilt of the defendant where the jury has been waived. Accordingly, questions regarding both the sufficiency and admissibility of the State's evidence remain at issue after the plea. The State can satisfy its burden of proof and support the plea in various ways. The two chief methods of supporting a plea are by the introduction of (1) stipulated evidence or (2) a judicial confession. Here, the State used appellant's judicial confession. Appellant confessed in writing that the allegations contained in the indictments were true and correct.

We must next decide whether the trial court's judgment was rendered independent of appellant's claim of error. However, as we observed in *Hargrove v. State,* 40 S.W.3d 556, 558 (Tex.App.—Houston [14th Dist.] 2001, pet. ref'd), the Court of Criminal Appeals has provided us with little guidance in this regard. The language of *Young* and its reasoning focus upon conditional pleas, but there is no indication in the opinion that Young entered a conditional plea. *Id.* Nevertheless, the Court of Criminal Appeals held the judgment in *Young* was not rendered independent of the alleged error. *Young,* 8 S.W.3d at 667.

■ The Court of Criminal Appeals may have found some linkage between the alleged error and Young's plea in that the plea was entered immediately after her motion to suppress was overruled. *Hargrove,* 40 S.W.3d at 558. Apart from a temporal connection, some have simply concluded that where error is predicated upon the denial of a motion to suppress, the judgment is not independent of the alleged error. *See, e.g., Guerrero v. State,* 64 S.W.3d 436, 439 (Tex.App.—Waco 2001, no pet. h.) (holding the judgment was not independent of the denial of a motion to suppress an allegedly involuntary confession). Here, appellant's plea was entered two and a half months after the trial court removed Parnham as counsel for the accused. Further, unlike a motion to suppress, which goes directly to the issue of proof of the defendant's guilt, the substitution of counsel has no direct nexus with the guilt or innocence of the defendant. Accordingly, we find appellant waived all non-jurisdictional error by his plea of guilty.

### 2. Waiver by want of an objection

We also find under the record presented here that appellant has waived any error by failing to object to the removal. First, Parnham suggested he might have a conflict of interest and asked the court for assistance in the matter. Moreover, he suggested that removal might be appropriate and advised the court, "[w]e have [alternate] representation that would be satisfactory to Mr. Brink available to represent Mr. Brink throughout the course of [the] prosecution." Second, when Parnham was removed, neither he nor appellant made any objection. Again, at the hearing to substitute counsel, neither Parnham, Lambright, nor appellant objected to the trial court's decision. In fact, at the end of the hearing, appellant retained Lambright as his new counsel and apologized to the court for any inconvenience he may have caused the court. Later, at the plea hearing, Lambright and appellant again refrained from making any objection regarding Parnham's removal.

■ Appellant cannot, after suggesting that counsel be removed, complain on appeal that the trial court erred in doing so. Accordingly, appellant waived any complaint regarding Parnham's removal when he knew of Parnham's conflict of interest and agreed, without objection, to retain Lambright as new counsel. *See* TEX. R.APP. P. 33.1(a); *see also Taylor v. State,* 939 S.W.2d 148, 155 (Tex.Crim.App.1996) (holding that to preserve error for appellate review, the defendant must make a timely request, objection or motion and obtain an adverse ruling); *Emerson,* 756 S.W.2d at 368 (finding appellant waived error by agreeing to new counsel after trial court removed his counsel of choice).

### 3. No error in removal

■ Even if the issue had been preserved for review, we perceive no error in counsel's removal. Although an accused is entitled to counsel of choice, this choice is not without limitations. One such limitation arises when counsel has an actual or potential conflict of interest in representing the accused. *Stearnes,* 780 S.W.2d at 222–23. An actual conflict of interest exists if counsel is required to make a choice between advancing his client's interest in a fair trial or advancing other interests to the detriment of his client's interest. *See Monreal v. State,* 947 S.W.2d 559, 564 (Tex.Crim.App.1997); *Perillo v. Johnson,* 205 F.3d 775, 781 (5th Cir.2000). Here, the record reflects an actual conflict of interest because Parnham acknowledged he was not sure how he would cross-examine Gipp and attack her credibility without using privileged information obtained while he was her attorney. Thus, Parnham would have been required to make a choice between advancing appellant's interests and protecting confidential information he acquired from a former client. These facts present an *actual* conflict of interest. *Ramirez v. State,* 13 S.W.3d 482, 487 (Tex.App.—Corpus Christi 2000, pet. dism'd). Where an attorney is unable to cross-examine, or is hindered in the cross-examination of, a government witness because of a privilege arising from counsel's prior representation of the witness, the defendant is denied effective representation as a matter of law. *United States v. Martinez,* 630 F.2d 361, 362 (5th Cir.1980).

■ Of course, a defendant may waive the right to conflict-free counsel, under some circumstances, if the waiver is done knowingly and voluntarily. *Ex parte Prejean,* 625 S.W.2d 731, 733(Tex.Crim.App.1981). For a waiver of conflict-free counsel to be effective, the record must show the defendant is aware of the conflict, realizes the consequences of continuing with such counsel, and is aware that he has the right to obtain other coun-

sel. *Id.* However, the trial court has an independent duty to ensure a fair trial and may infringe upon the defendant's constitutional right to counsel if there is an actual or serious potential for conflict. *Wheat v. United States*, 486 U.S. 153, 162–64, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988); *Stearnes*, 780 S.W.2d at 223.

■■■ Here, the conflict of interest was not waived by appellant. Moreover, because the conflict stemmed from counsel's knowledge of Ms. Gipp's privileged communications, we doubt the conflict of interest could have been unilaterally waived by appellant in any event. The Texas Disciplinary Rules of Professional Conduct prohibit the use of "confidential information of a former client to the disadvantage of the former client after the representation is concluded unless the *former client* consents after consultation or the confidential information has become generally known." Tex. Disciplinary R. Prof'l Conduct 1.05(b)(3), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A (Vernon 1998) (Tex. State Bar R. art. X, § 9) (emphasis added).[2]

■■■ Several interests are protected by prohibiting representation when there is a conflict of interest: (1) the preservation of the intangible representation elements of loyalty and client confidence essential to any attorney-client relationship; (2) the preservation of client confidences; (3) the assurance of unfettered advocacy on behalf of each client; and (4) avoidance of additional costs of representation and litigation occasioned by inopportune changes in counsel. *Conoco Inc. v. Baskin*, 803 S.W.2d 416, 421 (Tex.App.—El Paso 1991, no writ). Here, Ms. Gipp had as much interest in protecting the confidentiality of her conversations with counsel as appel-

lant had in the expectation that his counsel would conduct a vigorous cross-examination. "Clients should not be put in a position where they must fret over whether the confidential information they disclosed to their previous attorney will later be used against them." *Wasserman v. Black*, 910 S.W.2d 564, 568 (Tex.App.—Waco 1995, writ dism'd w.o.j.). Thus, an effective waiver under these facts would have had to come from both appellant and Ms. Gipp.

Moreover, even if appellant could have unilaterally waived the conflict of interest, the record demonstrates that he did not waive the conflict of interest. Thus, even if the issue had been preserved for review, we find no error in Parnham's removal in light of his actual conflict of interest, the absence of any waiver of conflict-free counsel, appellant's right to effective representation, and appellant's acquiescence in and implicit approval of the decision to retain new counsel. Accordingly, we overrule appellant's first and second issues.

**B. Ineffective Assistance of Counsel**

In his third issue, appellant alleges he was denied effective assistance of counsel during the preparation and filing of his motion for new trial. More specifically, he contends that his counsel was ineffective because this motion was not sworn or timely presented for a hearing.

■■■ Appellant has a right to counsel which includes the right to reasonably effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see also Ex parte Gonzales*, 945 S.W.2d 830, 835 (Tex. Crim.App.1997). To show ineffective assistance of counsel, appellant must prove

**2.** The disciplinary rules are not determinative of whether counsel should have been disqualified, but they do provide guidelines and suggest the relevant considerations. *In re Cap Rock Elec. Co-op., Inc.*, 35 S.W.3d 222, 230 (Tex.App.—Texarkana 2000, no pet.).

that (1) his trial counsel's performance was deficient, in that counsel made such serious errors he was not functioning effectively as counsel; and (2) the deficient performance prejudiced the defense to such a degree that the defendant was deprived of a fair trial. *See Hernandez v. State,* 726 S.W.2d 53, 56–57 (Tex.Crim. App.1986). The first prong of this standard presumes "that counsel is better positioned than the appellate court to judge the pragmatism of the particular case, and that [counsel] made all significant decisions in the exercise of reasonable professional judgment." *Jackson v. State,* 877 S.W.2d 768, 771 (Tex.Crim.App.1994).

Under the second prong, appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Hernandez,* 988 S.W.2d at 772. A reasonable probability is "a probability sufficient to undermine confidence in the outcome of the proceedings." *Id.* The second prong of the standard carries a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

■■■■ The convicted defendant has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Moore v. State,* 694 S.W.2d 528, 531 (Tex.Crim.App.1985). An appellate court should not try to second guess trial counsel's tactical decisions which do not fall below the objective standard of reasonableness. *Young v. State,* 991 S.W.2d 835, 837 (Tex.Crim.App.1999). Instead, we must determine whether this objective standard has been met by the totality of the representation rather than by isolated acts or omissions of trial counsel, and we must apply this test to the facts as they were at the time of the trial, without using hindsight. *Bridge v. State,* 726 S.W.2d 558, 571 (Tex.Crim.App.1986).

■■■■ Several courts of appeals, including this one, have concluded that the statutory time period for filing a motion for new trial is a critical stage of the proceedings, during which a criminal defendant is constitutionally entitled to assistance of counsel. *See, e.g., Prudhomme v. State,* 28 S.W.3d 114, 119 (Tex.App.—Texarkana 2000 pet. ref'd.); *Hanson v. State,* 11 S.W.3d 285, 288 (Tex.App.—Houston [14th Dist.] 1999, pet. ref'd); *Massingill v. State,* 8 S.W.3d 733, 736 (Tex.App.—Austin 1999, no pet.). However, the Texas Court of Criminal Appeals has not decided this issue. *See Smith v. State,* 17 S.W.3d 660, 663 n. 3 (Tex.Crim.App.2000). Although we presume that trial counsel effectively represented his client during the time period for filing a motion for new trial, this presumption is effectively rebutted by counsel's failure to present a valid motion. *Prudhomme,* 28 S.W.3d at 120 (holding that defendant's right to counsel under the Sixth Amendment was violated where he was without counsel to assist him in preparing and filing a motion for new trial).

Here, the record affirmatively shows that trial counsel filed a timely motion for new trial. The record also shows the motion was not sworn or supported by affidavits, nor did counsel obtain a hearing on the motion. In his motion for new trial, appellant raised three arguments: (1) the evidence is legally and factually insufficient to support the verdict; (2) his plea of guilty was not made knowingly and voluntarily; and (3) he was deprived of his right to counsel of choice.

■■■■ Not all motions for new trial require supporting affidavits. *See State v. Daniels,* 761 S.W.2d 42, 44 (Tex.App.—Austin 1988, pet. ref'd). The motion must be supported by an affidavit only when the movant is attacking the verdict based on matters outside the record. *Harmon v.*

*State,* 889 S.W.2d 521, 524 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd). Similarly, a hearing on a motion for new trial is only necessary where the motion raises matters that are not determinable from the record. *Reyes v. State,* 849 S.W.2d 812, 816 (Tex.Crim.App.1993).

 The only argument raised by appellant in which an affidavit or a hearing could have been beneficial was whether or not his plea was voluntary. *Ex parte Moody,* 991 S.W.2d 856, 857–58 (Tex.Crim.App.1999). By all outward appearances, the record suggests appellant's plea was voluntary. To overcome the current record, as well as the presumption of regularity, counsel was obliged to rely on evidence outside the record. Hence, the motion should have been supported by an affidavit, and the issue should have been further developed at a hearing. Presumably, counsel had some basis for alleging that appellant's plea was involuntary; he did not, however, enlighten the trial court as to the grounds for his belief. Because it is unreasonable to allege an error not determinable from the record without a supporting affidavit and a hearing on the motion for new trial, counsel's performance fell below the accepted standard of reasonableness. *See Vasquez v. State,* 830 S.W.2d 948, 949 (Tex.Crim.App.1992). Accordingly, appellant has satisfied the first prong of *Strickland.*

 Turning to the second prong of *Strickland,* appellant must also show a reasonable probability that, but for counsel's errors, the outcome of the trial would have been different. *Ex Parte Morrow,* 952 S.W.2d 530, 536 (Tex.Crim.App.1997). In other words, appellant had the burden to develop facts and details necessary to show that but for counsel's failure to obtain a hearing on the motion for new trial, the outcome of the proceeding would have been different. Here, counsel's deficient representation also had the effect of depriving appellant of a record showing harm. Without a record, it is impossible for this Court to properly assess the prejudice, if any, stemming from counsel's conduct. Nevertheless, we cannot presume harm-if the trial court erred in overruling the motion for new trial, it remains appellant's burden to demonstrate the error. *Edwards v. State,* 37 S.W.3d 511, 515 (Tex.App.—Texarkana 2001, pet. ref'd).

This is not to say appellant is without a remedy; harm may ultimately be established via a post-conviction writ of habeas corpus. However, there is nothing in the record on direct appeal to suggest appellant was prejudiced by his counsel's failure to attach a supporting affidavit or obtain a hearing on his motion for new trial. Thus, the second prong of *Strickland* has not been satisfied. We overrule appellant's third issue.

The judgment of the trial court is affirmed.