# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00181-CR

**Kenneth Peter Johnson, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT
### NO. D-1-DC-08-301377, HONORABLE MICHAEL LYNCH, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Kenneth Peter Johnson challenges an order revoking his probation. Appellant previously pleaded guilty to robbery and was sentenced to six years in prison, but the trial court probated the sentence and imposed a four-year term of community supervision. Before the probation term expired, the trial court found that appellant violated a condition of probation prohibiting him from intentionally or knowingly possessing a firearm. The trial court then revoked the probation term and imposed a six-year prison term. Appellant asserts here that his trial counsel had a conflict of interest from previously representing a witness who testified at the revocation hearing. Appellant argues that the trial court erred by failing to hold a *Garcia*[1] hearing to determine if appellant had waived his right to conflict-free counsel. Appellant also contends that the conflict caused his counsel

---

[1] *United States v. Garcia*, 517 F.2d 272, 277 (5th Cir. 1975), *abrogated on other grounds by Flanagan v. United States*, 465 U.S. 259, 263 n.1 (1984).

to render ineffective assistance, and that his counsel's performance was otherwise so deficient as to constitute ineffective assistance. We will affirm the judgment revoking appellant's community supervision.

## BACKGROUND

Appellant was on community supervision when police officers tried to serve an arrest warrant on him for alleged probation violations. He was at Tamisha Brown's apartment, and barricaded himself and Brown in the apartment for several hours.[2] Brown testified that, during the standoff, appellant ran around the inside of the apartment while Brown crouched in the utility room. There was testimony that appellant destroyed his cell phone during the standoff with police and that such action was consistent with an intent to hide illegal activity. Eventually, appellant surrendered and Brown consented to a search of the apartment. Police found a handgun bearing appellant's DNA inside one of Brown's purses. There was conflicting testimony regarding who owned the gun. Appellant testified that Brown owned the gun, but Brown and another friend, Jerrimy Johns, testified that appellant owned the gun. Brown admitted buying ammunition, but said she bought it for appellant.

During the revocation hearing, an issue arose regarding whether appellant's trial counsel had a conflict of interest due to his previous representation of witness Johns on an unrelated matter. Johns testified that his truthful testimony in this matter could earn a reduction of his sentence

---

[2] While there was a dispute whether appellant "lived with" Brown, his parents, or somewhere else, it is undisputed that he spent sufficient time at Brown's apartment to have clothes there.

2

in a pending federal matter. During Johns's testimony in this case, the trial court cautioned appellant's counsel to be aware of asking questions that would infringe on Johns's privilege for communications made when appellant's attorney represented Johns. Immediately after Johns's testimony, appellant's counsel stated that believed he had asked Johns every question he wanted to ask. Later, appellant and his trial counsel had the following exchange on the subject:

> Q. I discussed with you a possible conflict of interest early on, did I not, between my representing you and my representing Jerrimy Johns?
>
> A. Yes, sir.
>
> Q. And what was—what was your response to that?
>
> A. My response was then therefore I have an appeal. If there is a conflict of interest, I have a chance of appeal.
>
> Q. Perhaps now, but earlier on, did you have any objection to my representing Jerrimy?
>
> A. No, sir.

At the close of the hearing, the trial court determined that appellant possessed the seized gun in violation of the conditions of his community supervision.

## DISCUSSION

Appellant contends on appeal that the trial court erred by failing to hold a *Garcia* hearing to determine if appellant had waived his right to conflict-free counsel. He also contends that his counsel failed to render effective assistance, both because of the conflict of interest and because

3

of other instances of ineffectiveness such as adducing unhelpful testimony and failing to object to the admission of harmful evidence.

The right to counsel guarantees a person an attorney who is not burdened by an actual conflict of interest. *See Strickland v. Washington*, 466 U.S. 668, 692 (1984). When an attorney represents two clients whose interests in the outcome of a matter are different, an actual conflict of interest exists for the attorney. *See Ramirez v. State*, 13 S.W.3d 482, 486-87 (Tex. App.—Corpus Christi 2000, pet. dism'd). When there is an actual conflict, the trial court must hold a hearing to ensure that the defendant (1) is aware of the conflict, (2) realizes the potential hazard to his defense from using the conflicted attorney, and (3) knows his right to obtain other counsel. *United States v. Greig*, 967 F.2d 1018, 1022 (5th Cir. 1992) (synthesizing the rule from *United States v. Garcia*, 517 F.2d 272, 277 (5th Cir. 1975)). But a *Garcia* hearing is required only if the court has been alerted to or knows of the existence of an actual conflict of interest. *See Greig*, 967 F.2d at 1022. Texas courts have held that a *Garcia* hearing is unnecessary when a defendant has failed to show that an actual conflict of interest exists. *Perez v. State*, 352 S.W.3d 751, 758 (Tex. App.—San Antonio 2011, no pet.). Even the existence of an actual conflict does not require reversal absent a showing of an adverse effect on the judgment. *Greig*, 967 F.2d at 1024.

The trial court was aware of a *potential* conflict of interest, but appellant has not shown that his attorney had an *actual* conflict of interest. Although appellant's trial counsel previously represented witness Johns, the only indication in the record is that he no longer represented Johns and that Johns had other counsel when testifying at this hearing. Trial counsel questioned Johns about statements Johns had made previously to trial counsel when he was

4

Johns's counsel. The trial judge cautioned appellant's counsel to craft his questions carefully to avoid violating Johns's attorney-client privilege, but appellant's trial counsel reported that he had asked all of the questions he wanted to ask. Appellant argues that his trial counsel's conflict of interest weighed on the crucial issue of who possessed the firearm. *See Brink v. State*, 78 S.W.3d 478, 485 (Tex. App.—Houston [14th Dist. 2001, pet. ref'd); *Ramirez*, 12 S.W.3d at 487. But appellant has not demonstrated how his trial counsel's previous representation of Johns created a conflict in counsel's interests during the revocation hearing. Appellant's trial counsel had no demonstrated interest in whether Johns received a reduced federal sentence in exchange for his testimony in this case. The questions that appellant's counsel had to choose carefully related to previous statements Johns had made to his attorney that were inconsistent with his testimony in the revocation hearing—statements that another attorney likely would not have known of and that might have been protected by attorney-client privilege regardless of who was asking the questions in the revocation hearing. Appellant has not shown that his trial attorney's previous representation of Johns constrained the scope of questioning in any way relevant to this proceeding. If anything, trial counsel's prior representation of Johns gave him insights or information that helped appellant. Appellant has not shown any questions his counsel could have asked or actions that he could have taken but did not due to his previous representation and has not shown that his counsel had divergent interests in the outcome of appellant's hearing. We conclude that, because appellant has not shown that his counsel had an actual conflict of interest, the trial court did not err by declining to hold a *Garcia* hearing.

Appellant contends that he received ineffective assistance of counsel due to the alleged conflict of interest and other mistakes trial counsel made. Claims of ineffective assistance of counsel are governed by the United States Supreme Court's decision in *Strickland*, 466 U.S. at 687; *see also Hernandez v. State*, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999). A defendant must show that (1) counsel's performance was deficient and (2) counsel's deficient performance prejudiced the defense, resulting in an unreliable or fundamentally unfair outcome. *See Strickland*, 466 U.S. at 687-88. To show deficient performance, a defendant must show that counsel's performance fell below an objective standard of reasonableness. *See id.* The review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within a wide range of reasonable professional assistance. *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). To overcome the presumption of reasonable professional assistance, the record must affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). We review the effectiveness of counsel in light of the totality of the representation and the circumstances of each case. *Id.* at 813. Appellant's contention that he is entitled to a less stringent standard of review due to his counsel's alleged conflict fails because, as described above, he failed to prove an actual conflict. *See Perez*, 352 S.W.3d at 758.

Appellant contends that his trial counsel made several errors:

- He unnecessarily adduced evidence concerning the marijuana possession allegation that the State did not cover in its examination of witnesses. The State offered and the court admitted a "weed pipe" found in Brown's apartment, but the State did not ask questions about it. Appellant's trial counsel nevertheless elicited testimony from Brown claiming the pipe as her own and from appellant and his father regarding appellant's non-use of marijuana.

- He asked questions about ammunition found in the apartment that the State did not cover, drawing the trial court's attention to it and allowing a State's witness to testify that another person had left an assault rifle at the apartment in appellant's care. His trial counsel did not object to this testimony about an extraneous matter.

- He did not object to Brown's characterization of her relationship with appellant as "rough." Trial counsel also elicited Brown's testimony that her association with appellant required her to obtain protection.

- He elicited testimony from Brown that her meetings with trial counsel were appellant's idea.

- He failed to object to a police officer's testimony that appellant destroyed a cell phone to distance himself from contraband or evidence of criminal activity.

- He asked the police officer why so much attention and resources were focused on appellant and did not object when the officer stated that appellant had extensive convictions and a propensity for violence. Counsel then proceeded to explore those assertions.

- He failed to object when a police officer stated that it was "quite clear" to him that appellant mentally, emotionally, and probably physically abused Brown and asked her to lie for him in several past cases.

- He did not object when Johns testified that appellant and Johns "ran the streets together." He asked Johns why there was a gun in Brown's apartment. When Johns testified that appellant was never violent with me, trial counsel asked if Johns ever saw appellant being violent toward others with a gun—and Johns said yes. Trial counsel then asked Johns to elaborate. He did not object when Johns testified that appellant asked him to burn Brown's car in retaliation for not claiming the firearm.

- He seemed unprepared for police testimony about appellant's alleged propensity for violence, Brown's testimony that appellant created the hole in the bathroom ceiling, the lack of surveillance of appellant, and the absence of wiretaps.

- He caused the State to introduce recordings of jail calls from appellant to an unknown woman, encouraging her to lie to law enforcement and destroy evidence.

Trial counsel may have chosen some of these tactics as part of a strategy, but there is no direct evidence of what that strategy was. Without evidence regarding trial strategy, it is difficult for an appellant to establish that counsel's assistance was ineffective. *See Thompson*, 9 S.W.3d at 813-14; *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). There are many possible strategies counsel may have been pursuing. For instance, he may have allowed Brown's testimony about appellant's violence to give the impression she had a motive to lie about appellant. He may have explored the emphasis police placed on this case to support a theory that Brown's testimony was the result of pressure from the State. Eliciting the testimony about the phone calls to a woman other than Brown supported a theory that Brown's testimony was vengeful. Trial counsel filed motions, called and examined witnesses, and argued cogently for non-revocation and for continued probation. He believed he had asked all necessary and desired questions of his former client. Considering the totality of appellant's trial counsel's representation, we conclude that appellant has not shown his trial counsel's performance fell below an objective standard of reasonableness.

Even if appellant had shown deficient performance by counsel, he has not shown that the errors were so serious as to deprive him of a fair trial. Appellant has not shown how his counsel's alleged conflict of interest affected his representation in any way that affected the outcome. At its heart, the revocation hearing turned on the resolution of the credibility choice regarding ownership of the gun. Brown and Johns both testified that the seized gun belonged to appellant. The trial court also had before it evidence of appellant's criminal history and appellant's DNA on the gun. The court might have found Brown's credibility enhanced by her admissions that she possessed a "weed pipe" and that she could not remember who owned the ammunition, thus indicating that she

8

was testifying truthfully, not simply trying to inculpate appellant. We are confident that none of the alleged errors by counsel altered the trial court's credibility choice and, thus, did not produce an unfair or unreliable outcome. *See Strickland*, 466 U.S. at 687.

## CONCLUSION

Finding no error presented requiring reversal, we affirm the judgment revoking appellant's community supervision.

_____

Jeff Rose, Justice

Before Chief Justice Jones, Justices Henson and Rose

Affirmed

Filed:   October 18, 2012

Do Not Publish